# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SANDS CORP., a Nevada corporation,<br><br>                   Plaintiff,<br>v.<br><br>UNKNOWN REGISTRANTS OF www.wn0000.com, www.wn1111.com, www.wn2222.com, www.wn3333.com, www.wn4444.com, www.wn5555.com, www.wn6666.com, www.wn7777.com, www.wn8888.com, www.wn9999.com, www.112211.com, www.4456888.com, www.4489888.com, www.001148.com, and www.2289888.com,<br><br>                   Defendants. | Case No. 2:15-cv-02341-APG-NJK<br><br>**DEFAULT JUDGMENT AND PERMANENT INJUNCTION**<br><br>(ECF No. 20) |

This is a trademark infringement action brought by Las Vegas Sands Corp. ("Las Vegas Sands") against the registrants of Internet domains that have been using, and that are continuing to use, Las Vegas Sands' federally registered trademarks in commerce in connection with the operation of online casinos.

The Complaint was filed and Summons issued on December 9, 2015. (ECF Nos. 1, 6.) The Summons and Complaint were served by email on February 10, 2016, in accordance with my prior order authorizing such service. (ECF Nos. 9, 17.) None of the Defendants having answered or otherwise responded to the Complaint within the time allowed, on March 9, 2016, the Clerk of the Court entered the Defendants' default. (ECF No. 19.) On March 10, 2016, Las Vegas Sands moved the Court for entry of a default judgment and permanent injunction. (ECF No. 20.) I have considered the motion and related papers.

## I.    FINDINGS OF FACT

I hereby make the following findings of fact:

### Las Vegas Sands and Its Trademarks

1.    Las Vegas Sands is a Fortune 500 company that is publicly traded on the New

York Stock Exchange.  Las Vegas Sands develops destination resort properties that feature premium accommodations, world-class gaming and entertainment, convention and exhibition facilities, celebrity chef restaurants, and many other amenities.  Las Vegas Sands' properties include The Venetian, The Palazzo, and The Sands Expo and Convention Center in Las Vegas, Nevada; Sands Bethlehem in Bethlehem, Pennsylvania; and Marina Bay Sands in Singapore. Through its 70.2% ownership of Sands China, Ltd., Las Vegas Sands also owns and operates The Venetian Macao, Sands Macao, Four Seasons Hotel Macao, and Sands Cotai Central in Macao.  (ECF No. 2-1, Declaration of Dave Horton (the "Horton Decl.") ¶ 3.)

2.     The Venetian is a luxury hotel and casino resort on the Las Vegas Strip ("The Venetian Las Vegas").   The resort opened for business on May 3, 1999, and was built at a cost of $1.5 billion.  The Venetian Las Vegas is one of the ten largest hotels in the world.  The resort has more than 4,000 suites situated in a 35-story three-wing tower, and a 120,000 square foot casino with approximately 110 table games and 1,370 slot machines, among other amenities. Las Vegas Sands maintains a website at <venetian.com> through which it markets its hotel and casino services and, among other things, provides information and accepts hotel room reservations.  (Horton Decl. ¶ 4.)

3.     The Venetian Macao is a 40-story, $2.4 billion property on the Cotai Strip. The 10,500,000 square foot resort is the largest single structure hotel building in Asia, one of the largest buildings in the world by area, and the largest casino in the world.  The resort opened on August 28, 2007.  The resort has 3,000 suites and a 550,000 square foot casino with 3,400 slot machines and 800 table games, among other amenities. The Venetian Macao maintains a website at <venetianmacao.com> through which it, among other things, provides information and accepts hotel room reservations.  (The Venetian Las Vegas and The Venetian Macao shall be collectively referred to as the "Venetian Properties").  (Horton Decl. ¶ 5.)

4.     As a result of its longstanding and prominent use of the VENETIAN trademark in commerce in connection with the Venetian Properties, Las Vegas Sands has developed common law trademark rights in the VENETIAN trademark.  (Horton Decl. ¶ 6.)

5.     In addition to its common law rights, Las Vegas Sands owns trademark

registrations for the VENETIAN trademark worldwide.  In the United States, Las Vegas Sands'

federal trademark registrations include, among others, the following:

| TRADEMARK | REG. NO. | DATE OF FIRST USE | GOODS/SERVICES |
|---|---|---|---|
| THE VENETIAN | 2,507,362 | 5/4/1999 | Casino and gaming services; providing casino and gaming facilities; entertainment, namely, live musical performances, theatrical productions and comedy productions; health clubs; amusement centers and arcades; providing casino and gaming services by means of web sites and a global computer network |
| THE VENETIAN RESORT HOTEL CASINO | 2,350,633 | 5/4/1999 | Casino and gaming services; gaming facilities; entertainment, namely, live musical performances, theatrical productions and comedy; sporting events; health clubs; amusement centers and arcades; providing casino and gaming services by means of web sites and a global computer network |
| VENETIAN | 2,507,363 | 5/4/1999 | Casino and gaming services; providing casino and gaming facilities; entertainment, namely, live musical performances, theatrical productions and comedy productions; health clubs; amusement centers and arcades; providing casino and gaming services by means of web sites and a global computer network |

(Las Vegas Sands' federal trademark registrations and common law rights shall be collectively

referred to as the "VENETIAN Mark").  (Horton Decl. ¶ 7.)

6.    Las Vegas Sands also owns federal trademark registrations for the following

design marks, for use in connection with, among others, "casino and gaming services:"





Reg. No. 2,352,455                    Reg. No. 2,655,917

(collectively, "the VENETIAN Design Mark").  (Horton Decl. ¶ 8.)

7.    Based on its federal trademark registrations and its longstanding and exclusive

use of the VENETIAN Mark and the VENETIAN Design Mark, Las Vegas Sands owns the

exclusive right to use the VENETIAN Mark and the VENETIAN Design Mark in commerce.

7456708_1

1  (Horton Decl. ¶ 9.)

2      8.      The VENETIAN Mark and the VENETIAN Design Mark have become

3  distinctive and famous in the United States for, among other services, casino and gaming

4  services.  (Horton Decl. ¶ 10.)

5                          **The Defendants' Infringing Conduct**

6      9.      The Defendants have set up a network of Internet websites that are accessible to

7  U.S. citizens that are designed to drive Internet users to one or more online casinos.  (Horton

8  Decl. ¶ 11.)    The infringing websites appear at the following Internet locations:

9  www.wn0000.com,          www.wn1111.com,          www.wn2222.com,          www.wn3333.com,

10  www.wn4444.com,          www.wn5555.com,          www.wn6666.com,          www.wn7777.com,

11  www.wn8888.com,          www.wn9999.com,          www.112211.com,          www.4456888.com,

12  www.4489888.com, www.001148.com, and www.2289888.com (collectively, the "Domains").

13  GoDaddy.com, LLC is the registrar of each Domain.  (Horton Decl. ¶ 12.)

14      10.     The    first    ten    Domains    (*i.e.*,    www.wn0000.com,    www.wn1111.com,

15  www.wn2222.com,          www.wn3333.com,          www.wn4444.com,          www.wn5555.com,

16  www.wn6666.com,   www.wn7777.com,   www.wn8888.com,   www.wn9999.com)   display   a

17  webpage featuring an online casino, a depiction of which is set forth below:



(Horton Decl. ¶ 13.)

11.     This homepage operates an online casino purporting to be associated with, affiliated with, approved by, or sponsored by Las Vegas Sands. As the above screenshot clearly demonstrates, to mislead customers, the webpage prominently features the VENETIAN Design Mark at the top, left-hand, corner of the page. (Horton Decl. ¶ 14.)

12.     The remaining five Domains (*i.e.*, www.112211.com, www.4456888.com, www.4489888.com, www.001148.com, and www.2289888.com) display a webpage featuring an identical online casino, a depiction of which is set forth below:



13.     This homepage also operates an online casino purporting to be associated with,

7456708_1

1  affiliated with, approved by, or sponsored by Las Vegas Sands.  As the above screenshot clearly

2  demonstrates, to mislead customers, the webpage prominently features the VENETIAN Mark

3  and the VENETIAN Design Mark at the top, center, of the page.  (Horton Decl. ¶ 16.)

4      14.    The Domains offer specific casino games such as card games, roulette, or dice

5  games, the same games offered by Las Vegas Sands at The Venetian and The Venetian Macao.

6  (Horton Decl. ¶ 17.)

7      15.    The Domains permit gamblers to register, create individual financial accounts,

8  and gamble online.  (Horton Decl. ¶ 18.)

9      16.    Las Vegas Sands has not consented to, approved of, or authorized Defendants'

10  use of the VENETIAN Mark or the VENETIAN Design Mark in connection with the Domains.

11  (Horton Decl. ¶ 19.)

12  **Las Vegas Sands Has Suffered and Will Continue to Suffer Irreparable Harm**

13      17.    The VENETIAN Mark and the VENETIAN Design Mark are embodiments of the

14  goodwill and reputation Las Vegas Sands and its predecessors have developed as a provider of

15  entertainment and casino services.  As a result of Defendants' blatant exploitation of Las Vegas

16  Sands' trademarks without Las Vegas Sands' consent, Las Vegas Sands has lost control over the

17  VENETIAN Mark and the VENETIAN Design Mark.  This loss of control over its goodwill and

18  reputation is irreparable and Las Vegas Sands cannot be adequately compensated by an award of

19  money damages alone.  (Horton Decl. ¶ 20.)  As set forth above, the Defendants are operating

20  Internet casinos that are accessible to consumers located in the United States.  (Horton Decl.

21  ¶ 21.)  The Defendants are doing so using identical versions of the VENETIAN Mark and the

22  VENETIAN Design Mark used by Las Vegas Sands.  (*Id.*)  In addition, both Las Vegas Sands

23  and the Defendants are providing the same services under the VENETIAN Mark and the

24  VENETIAN Design Mark.  Las Vegas Sands has been providing gaming services under the

25  VENETIAN Mark and the VENETIAN Design Mark since 1999.  (*Id.*)  The Defendants' online

26  casinos provide gaming services and, in some cases, purport to allow users to participate in live

27  casino games being played at brick-and-mortar casinos by proxy.  (*Id.*)

28      18.    Because of the likelihood that confused consumers will mistakenly attribute to

1   Las Vegas Sands defects or negative impressions they have of Defendants' gaming services, Las

2   Vegas Sands' reputation has been harmed and continues to be threatened.  (Horton Decl. ¶ 22.)

3   Consumer confusion has occurred, is continuing to occur, and is inevitable, resulting in a loss of

4   control over Las Vegas Sands' reputation and goodwill. (*Id.*)

5          19.     Here, the gambling public is aware of the Defendants' and similar online casinos,

6   have had negative experiences with them, and have associated those negative experiences with

7   Las Vegas Sands.  (Horton Decl. ¶ 23.)  For example, as cited in an earlier case filed by Las

8   Vegas Sands against similar online casinos, on or about January 10, 2014, Las Vegas Sands

9   received an email from a person who claims to have been cheated by an online casino operated at

10  www.358.com, a Chinese Internet casino that used Las Vegas Sands' world famous "Sands"

11  trademark.  (*Id.*)  The email states:

12         I am playing the game at sands (www.358.com). (www.358.com) is cheating me.
           They do not pay money to me from 2014-1-8.  They are cheats.  I am very angry.
13         My account name is myray.  Please help me. I am in Shanghai, China.

14  (*See* No. 2:14-cv-00424-JCM-NJK, *Las Vegas Sands Corp. v. First Cagayan Leisure & Resort*

15  *Corp. et al.*, Doc. 4, Decl. of Dave Horton in Supp. of Pl.'s *Ex Parte* Mot. for TRO, Alternative

16  Service, and Prelim. Inj., dated March 19, 2014 ¶ 24.)  (Emphasis added.) (Horton Decl. ¶ 23.)

17         20.     Additional consumers have been deceived and confused by the Defendants' use of

18  the VENETIAN Mark and the VENETIAN Design Mark on their online casinos but have not

19  reported the Defendants' fraudulent conduct to Las Vegas Sands.  (Horton Decl. ¶ 24.)  Based

20  upon their negative experiences, persons who associate Las Vegas Sands with the Defendants'

21  fraudulent activities due to the Defendants' use of the VENETIAN Mark and the VENETIAN

22  Design Mark have a negative opinion of Las Vegas Sands, and are extremely unlikely to ever

23  become customers or repeat consumers of Las Vegas Sands' gaming services, and are likely to

24  tell others about their negative experiences. (*Id.*)

25         21.     In addition, Las Vegas Sands has achieved an excellent reputation for providing

26  gaming services under the VENETIAN Mark and the VENETIAN Design Mark, in-part, because

27  Las Vegas Sands' casinos are regulated and licensed in their respective jurisdictions, and adhere

28  to the federal, state, and local statutes, rules, regulations, and ordinances that govern the

provision of gaming services in their respective jurisdictions. (Horton Decl. ¶ 25.) Many of these laws, rules, regulations, and ordinances are designed to, among other things, inspire consumer confidence in gaming, protect the consuming public from fraud and other unscrupulous gaming practices, provide a means of settling gambling disputes, and protect vulnerable persons. (*Id.*) For example, in Nevada, Las Vegas Sands may not provide gaming services to persons under 21 years of age. *See* Nev. Rev. Stat. § 463.350. (*Id.*) Las Vegas Sands' lawful gaming activities are also subject to close scrutiny and oversight by State gaming regulators. (*Id.*) In contrast, the Defendants' online casinos are not regulated by any legitimate governing body, do not operate according to any recognized standards, and appear to have no quality control safeguards, consumer protection safeguards, or legitimate means of resolving gaming disputes. (*Id.*) Thus, there are no safeguards preventing at-risk persons, such as persons under the age of 21, from being defrauded or otherwise victimized by the Defendants' casinos. (*Id.*) Upon information and belief, in addition to engaging in fraudulent gaming practices, the Defendants are providing gaming services, without restriction, to any person who utilizes Defendants' services. (*Id.*) To the extent the Defendants have engaged in fraudulent gaming practices and are providing gaming services to such persons, Las Vegas Sands' reputation has been damaged by the Defendants' use of the VENETIAN Mark and the VENETIAN Design Mark. (*Id.*)

22.     Las Vegas Sands is also losing business to the Defendants' online casinos. (Horton Decl. ¶ 26.) Persons who would otherwise travel to the United States to gamble at Las Vegas Sands' casinos in Las Vegas, Nevada, are instead gambling at the Defendants' online casinos. (*Id.*) The true scope and extent to which the Defendants' activities have resulted in lost revenue and will continue to do so is not known, cannot be measured, and will continue in the absence of a preliminary injunction. (*Id.*)

23.     In addition, it is unlikely that Las Vegas Sands will be able to recover on a money judgment entered against the Defendants. (Horton Decl. ¶ 27.) The defendants are known to use false identities and are believed to be principally located in mainland China. (*Id.*)

24.     Moreover, Defendants are creating the perception that Las Vegas Sands has

-8-

1    approved of, authorized, affiliated itself with, or sponsored Defendants' online gambling services

2    when in fact it has not.   (Horton Decl. ¶ 28.)   Las Vegas Sands publicly opposes Internet

3    gambling and has formed the Coalition to Stop Internet Gambling, an advocacy group dedicated

4    to preventing the proliferation of Internet gambling.   (*Id.*)   Las Vegas Sands and the Coalition to

5    Stop Internet Gambling are opposed to the proliferation of online gambling for, among other

6    reasons, the belief that insufficient safeguards exist to protect children, the elderly, the mentally

7    handicapped, and others from being defrauded by unscrupulous and unregulated Internet casinos,

8    like the ones operated by the Defendants in this case.   (*Id.*)   The Defendants' use of the

9    VENETIAN Mark and the VENETIAN Design Mark on the homepages of their online casinos,

10   even though unauthorized by Las Vegas Sands, affects Las Vegas Sands' credibility and

11   threatens to interfere with Las Vegas Sands' and the Coalition to Stop Internet Gambling's

12   efforts to stop the proliferation of Internet gambling.   (*Id.*)   This harm cannot be quantified or

13   adequately redressed by an award of money damages, and therefore is irreparable.

14       25.     The injuries Las Vegas Sands has suffered, namely, injury to its reputation, loss of

15   sales revenue, and the interference with its efforts to stop the proliferation of Internet gambling

16   are injuries that cannot be measured or compensated for by an award of money damages, and,

17   therefore, are irreparable and will continue in the absence of a preliminary injunction.   (Horton

18   Decl. ¶ 29.)

19   **II.    CONCLUSIONS OF LAW**

20       I hereby make the following conclusions of law:

21       **A.    The *Eitel* Factors**

22       26.     The Ninth Circuit has adopted seven factors that courts may consider when

23   adjudicating a motion for default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.

24   1986).   The *Eitel* factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of the

25   plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake

26   in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default

27   was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

28   Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

1          *Factor 1 - The Possibility of Prejudice to the Plaintiff*

2          27.     The first *Eitel* factor considers whether the plaintiff will suffer prejudice if a

3   default judgment is not entered. *See PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172,

4   1177 (C.D. Cal. 2002).  The Defendants were made aware of their infringing conduct when they

5   were served with the Summons and Complaint. (ECF Nos. 1, 17.)  However, The Defendants

6   have not answered or otherwise defended against Las Vegas Sands' claims and their default has

7   been entered. (ECF Nos. 18-19.)  The Defendants' failure to plead or otherwise defend against

8   Las Vegas Sands' claims is prejudicial to Las Vegas Sands because its claims cannot be resolved

9   on the merits absent the Defendants' participation, and, as a result, Las Vegas Sands will

10  effectively be denied relief absent entry of a default judgment. *Id.* ("Potential prejudice to

11  Plaintiffs favors granting a default judgment.  If Plaintiffs' motion for default judgment is not

12  granted, Plaintiffs will likely be without other recourse for recovery."); *O'Brien v. United States*,

13  No. 2:07-cv-00986-GMN-GWF, 2010 U.S. Dist. LEXIS 101941, at *11 (D. Nev. Sept. 9, 2010)

14  ("Villamor has failed to appear and defend this suit, delaying the judicial process. Without a

15  default judgment the United States cannot have a final resolution of its tax claims, and thus will

16  suffer prejudice."); *Coach Servs., Inc. v. YNM, Inc.*, No. 2:10–cv–02326–JST (PLAx), 2011 WL

17  1752091, at *2 (C.D. Cal. May 6, 2011) (finding that the first *Eitel* factor favored the plaintiff

18  because the defendant infringed the plaintiff's trademark rights and thereby harmed the

19  plaintiff's reputation).  Accordingly, the first *Eitel* factor favors entry of default judgment.

20          *Factors 2 and 3 - The Merits of Plaintiff's Substantive Claims and the*

21                          *Sufficiency of the Complaint*

22          28.     The second and third *Eitel* factors favor default judgment where the complaint

23  sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of

24  the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8; *Danning v. Lavine*, 572 F.2d 1386,

25  1389 (9th Cir. 1978).  The Complaint alleges five causes of action all of which derive from the

26  same nucleus of operative fact, namely, the Defendants' use of the VENETIAN Mark and the

27  VENETIAN Design Mark on Internet casino websites to falsely affiliate themselves with Las

28  Vegas Sands.  The Complaint alleges causes of action for: (1) trademark infringement under the

1    Lanham Act, 15 U.S.C. § 1114; (2) unfair competition under the Lanham Act, 15 U.S.C. §

2    1125(a); (3) trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c); (4) common law

3    trademark infringement; and (5) common law unfair competition.

4         29.    To state a claim for trademark infringement, a plaintiff must allege: (1) ownership

5    of a valid, protectable mark; and (2) that the alleged infringer is using a confusingly similar

6    mark. *Herb Reed Enterprises, LLC v. Florida Ent'mt Mgm't, Inc.*, 736 F.3d 1239, 1247 (9th Cir.

7    2013).  Las Vegas Sands has sufficiently alleged each of these elements.

8         30.    Las Vegas Sands has alleged the ownership of valid and protectable federally

9    registered trademarks including, without limitation, the VENETIAN Mark and the VENETIAN

10   Design Mark for use in connection with, among other services, "casino and gaming services."

11   (ECF No. 1, Compl. ¶¶ 10-11.)  "Federal registration of a trademark constitutes *prima facie*

12   evidence of the validity of the registered mark and of [the registrant's] exclusive right to use that

13   mark in commerce." *Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006).  Thus,

14   Las Vegas Sands' ownership of a valid and protectable trademark is plausibly alleged.

15        31.    Las Vegas Sands has alleged that the Defendants are using a confusingly similar

16   mark, namely, the VENETIAN Design Mark, on the websites of their online casinos, and the

17   Complaint contains images from the Defendants' online casino websites showing the

18   Defendants' use of a nearly verbatim copy of the VENETIAN Design Mark. (*Id.*, Compl. ¶¶ 14-

19   19.)  The Complaint alleges that, through their online casinos, the Defendants, "offer specific

20   casino games such as card games, roulette, or dice games, the same games offered by Las Vegas

21   Sands at The Venetian and The Venetian Macao." (*Id.* ¶ 20)  The Complaint also alleges that the

22   Defendants' online casinos, "permit gamblers to register, create individual financial accounts,

23   and gamble online," and that, "Las Vegas Sands has not consented to, approved of, or authorized

24   Defendants' use of the VENETIAN Mark or the VENETIAN Design Mark . . . ." (*Id.* ¶¶ 21-22.)

25   Thus, Las Vegas Sands has alleged the Defendants' use of a confusingly similar mark.

26        32.    Having plausibly alleged both elements, Las Vegas Sands has stated a *prima facie*

27   claim for trademark infringement under the Lanham Act.  Accordingly, the second and third

28   *Eitel* factors favor entry of default judgment.

7456708_1

*Factor 4 – The Sum of Money at Stake in the Action*

33.     The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of [the] Defendants' conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010).

34.     Given the Defendants' default, Las Vegas Sands will likely never know how much harm the Defendants' impersonation of Las Vegas Sands has done to Las Vegas Sands' reputation or precisely how much revenue the Defendants have derived from their online casino websites.

35.     The Complaint alleges more than sufficient facts for the Court to conclude that the Defendants' acts of trademark infringement were egregious and willful, and that Las Vegas Sands has suffered significant harm to the value of its trademarks and to the reputation and goodwill it has developed in them.  The Defendants have attempted to falsely impersonate Las Vegas Sands.  The Defendants' use of the VENETIAN Mark and VENETIAN Design Mark on the webpages of online casinos was no accident or mistake.  Las Vegas Sands began using the VENETIAN Marks in 1999. (Doc. 1, Compl. ¶ 7.)  In addition, the Defendants received notice of this action – they were served with the Summons and Complaint – yet failed to answer or defend against this action and continue their unlawful use of the VENETIAN Mark and VENETIAN Design Mark on unlawful online casinos.

36.     The Defendants' conduct of intentionally adopting and using Las Vegas Sands' trademarks has been egregious.  Given the foregoing, the injunctive relief sought is proportionate to the harm caused by the Defendants' actions.  Accordingly, the fourth *Eitel* factor favors entry of default judgment.

*Factor 5 - The Possibility of a Dispute Concerning Material Facts*

37.     The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case.  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  There is little possibility of a dispute concerning material facts here.  Las Vegas Sands' Complaint is plausible and supported by

website screenshots, federal trademark registrations, and detailed allegations showing that the Defendants have blatantly infringed upon Las Vegas Sands' rights in its federally registered trademarks. (*See generally* Doc. 1, Compl. ¶¶ 6-24.)  As noted above, upon entry of default, all factual allegations of the complaint, except those relating to the amount of damages, are taken as true. *Televideo Video Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *O'Brien*, 2010 U.S. Dist. LEXIS 101941, at *13 ("Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages."). Given the sufficiency of the Complaint and the fact that Las Vegas Sands' allegations must be accepted as true, no dispute of material fact precludes default judgment. *See, e.g., Wecosign, Inc., v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) ("Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote."); *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 921–22 ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment."); *Kloepping v. Fireman's Fund*, Case No. C 94-2684 THE, 1996 U.S. Dist. LEXIS 1786, at *11 (N.D. Cal. Feb. 13, 1996) ("[p]laintiff's presumptively accurate factual allegations leave little room for dispute. In addition, . . . the Court also notes that defendant had the opportunity to dispute the facts alleged, but has avoided and utterly failed to respond to plaintiff's allegations.").  Accordingly, the fifth *Eitel* factor favors entry of default judgment.

### Factor 6 – Whether the Defendant's Default Was Due to Excusable Neglect

38.    The sixth *Eitel* factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Landstar Ranger Inc.*, 725 F. Supp. 2d at 922.  A defendant's conduct is culpable, rather than excusable, if the defendant received actual or constructive notice of the filing of the action and failed to answer. *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).  The Defendants were properly served with the Summons and Complaint and are aware of this action. (ECF Nos. 1, 17.)  Accordingly, the sixth *Eitel* factor favors entry of default judgment.

***Factor 7 – The Strong Policy Favoring Decisions on the Merits***

39.     The seventh *Eitel* factor considers the public policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  Nevertheless, a default judgment is appropriate where a defendant deliberately neglects to wage a defense. *See PepsiCo., Inc.*, 238 F. Supp. at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible").  Rule 55 was designed to address this problem. *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 922.  Where it is impossible to adjudicate an action on the merits because a defendant refuses to participate in litigation, the strong policy favoring decisions on the merits is outweighed by the need to finalize controversies in a timely and orderly fashion, *id.*, as well as by the public policy favoring judicial economy. *See O'Brien*, 2010 U.S. Dist. LEXIS 101941, at *17-18 (stating that the Court was "compelled" to enter default judgment "in the interest of judicial efficiency").  Here, the Defendants were served with the Summons and Complaint and have refused to participate in this litigation.   Under these circumstances, the policies favoring finality and judicial economy outweigh the policy favoring a decision on the merits.  Accordingly, the seventh *Eitel* factor favors entry of default judgment.

***Summary of the Eitel Factors***

40.     All of the *Eitel* factors favor entry of default judgment.  Accordingly, the Court will grant Las Vegas Sands' motion for default judgment.

**D.     Permanent Injunction**

41.     The Lanham Act "vests the district court with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116).  "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendants' continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

42.     In this case, Las Vegas Sands seeks entry of a permanent injunction prohibiting the Defendants and any other person acting in concert or participation with them, from using any

7456708_1

reproduction, counterfeit, copy, or colorable imitation of the VENETIAN Mark or the VENETIAN Design Mark, in commerce including, without limitation: (a) by selling, offering for sale, distributing, promoting, or advertising any good or service in connection with any reproduction, counterfeit, copy, or colorable imitation of the VENETIAN Mark or the VENETIAN Design Mark; and (b) by displaying any reproduction, counterfeit, copy, or colorable imitation of the VENETIAN Mark or the VENETIAN Design Mark anywhere in the United States, including within any Internet domain name or on any Internet website.

43.     A party seeking a permanent injunction must establish the following: (1) actual success on the merits; (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiff; and (4) advancement of the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 374, 381, 172 L. Ed. 2d 249 (2008) (citation omitted).  Each of these elements is satisfied.

44.     First, a permanent injunction is warranted because Las Vegas Sands has achieved "actual success on the merits" through the Defendants' default, as set forth above.

45.     Second, the Complaint's allegations which must be accepted as true on a motion for default judgment, *Heidenthal*, 826 F.2d at 917-18, and the undisputed facts set forth in the Declaration of Dave Horton (ECF No. 2-1) show that Las Vegas Sands has suffered and will continue to suffer actual irreparable injury and harm to the good reputation and goodwill it has established in the VENETIAN Mark and VENETIAN Design Mark absent permanent injunctive relief. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citation omitted) ("[I]ntangible injuries, such as damage to . . . goodwill, qualify as irreparable harm."); *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable.").

The Complaint alleges the following:

The VENETIAN Mark and the VENETIAN Design Mark are embodiments of the substantial goodwill and excellent reputation Las Vegas Sands and its predecessors have developed as a premier provider of entertainment and casino services.  As a result of Defendants' blatant exploitation of Las Vegas Sands' trademarks without Las Vegas Sands' consent, Las Vegas Sands has lost control over the VENETIAN Mark and the VENETIAN Design Mark.  This loss of

7456708_1

control over its goodwill and reputation is irreparable and Las Vegas Sands cannot be adequately compensated by an award of money damages alone. **For example, Las Vegas Sands opposes legalized Internet gambling in the United States and elsewhere, and Defendants' use of the VENETIAN Mark and the VENETIAN Design Mark on the homepages of online casinos, even though unauthorized by Las Vegas Sands, threatens to dilute and detract from Las Vegas Sands' message and its efforts to stop the proliferation of online gambling**.

(ECF No. 1, Compl. ¶ 23.) (Emphasis added.)

46.     The Declaration of Dave Horton states the following:

The VENETIAN Mark and the VENETIAN Design Mark are embodiments of the substantial goodwill and excellent reputation Las Vegas Sands and its predecessors have developed as a premier provider of entertainment and casino services. As a result of Defendants' blatant exploitation of Las Vegas Sands' trademarks without Las Vegas Sands' consent, Las Vegas Sands has lost control over the VENETIAN Mark and the VENETIAN Design Mark. This loss of control over its goodwill and reputation is irreparable and Las Vegas Sands cannot be adequately compensated by an award of money damages alone.

As set forth above, the Defendants are operating Internet casinos that are accessible to consumers located in the United States. The Defendants are doing so using identical versions of the VENETIAN Mark and the VENETIAN Design Mark used by Las Vegas Sands. In addition, both Las Vegas Sands and the Defendants are providing the same services under the VENETIAN Mark and the VENETIAN Design Mark. Las Vegas Sands has been providing gaming services under the VENETIAN Mark and the VENETIAN Design Mark since 1999. The Defendants' online casinos provide gaming services and, in some cases, purport to allow users to participate in live casino games being played at brick-and-mortar casinos by proxy.

Because of the likelihood that confused consumers will mistakenly attribute to Las Vegas Sands defects or negative impressions they have of Defendants' gaming services, Las Vegas Sands' excellent reputation has been harmed and continues to be threatened. Consumer confusion has occurred, is continuing to occur, and is inevitable, resulting in a loss of control over Las Vegas Sands' reputation and goodwill.

Here, the gambling public is aware of the Defendants' and similar online casinos, have had negative experiences with them, and have associated those negative experiences with Las Vegas Sands. For example, as cited in an earlier case filed by Las Vegas Sands against similar online casinos, on or about January 10, 2014, Las Vegas Sands received an email from a person who claims to have been cheated by an online casino operated at www.358.com, a Chinese Internet casino that used Las Vegas Sands' world famous "Sands" trademark. The email states:

7456708_1

> I am playing the game at **sands** (www.358.com). (www.358.com) is cheating me. They do not pay money to me from 2014-1-8. They are cheats. I am very angry. My account name is myray. Please help me. I am in Shanghai, China.

(*See* No. 2:14-cv-00424-JCM-NJK, *Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp. et al.*, Doc. 4, Decl. of Dave Horton in Supp. of Pl.'s *Ex Parte* Mot. for TRO, Alternative Service, and Prelim. Inj., dated March 19, 2014 ¶ 24.) (Emphasis added.)

Upon information and belief, there are additional consumers who have been deceived and confused by the Defendants' use of the VENETIAN Mark and the VENETIAN Design Mark on their online casinos but who have not reported the Defendants' fraudulent conduct to Las Vegas Sands. **Based upon their negative experiences, persons who associate Las Vegas Sands with the Defendants' fraudulent activities due to the Defendants' use of the VENETIAN Mark and the VENETIAN Design Mark have a negative opinion of Las Vegas Sands, and are extremely unlikely to ever become customers or repeat consumers of Las Vegas Sands' gaming services, and are likely to tell others about their negative experiences**.

In addition, Las Vegas Sands' has achieved an excellent reputation for providing gaming services under the VENETIAN Mark and the VENETIAN Design Mark, in-part, because Las Vegas Sands' casinos are regulated and licensed in their respective jurisdictions, and adhere to the federal, state, and local statutes, rules, regulations, and ordinances that govern the provision of gaming services in their respective jurisdictions. Many of these laws, rules, regulations, and ordinances are designed to, among other things, inspire consumer confidence in gaming, protect the consuming public from fraud and other unscrupulous gaming practices, provide a means of settling gambling disputes, and protect vulnerable persons. For example, in Nevada, Las Vegas Sands may not provide gaming services to persons under 21 years of age. *See* Nev. Rev. Stat. § 463.350. Las Vegas Sands' lawful gaming activities are also subject to close scrutiny and oversight by State gaming regulators. In contrast, the Defendants' online casinos are not regulated by any legitimate governing body, do not operate according to any recognized standards, and appear to have no quality control safeguards, consumer protection safeguards, or legitimate means of resolving gaming disputes. Thus, there are no safeguards preventing at-risk persons, such as persons under the age of 21, from being defrauded or otherwise victimized by the Defendants' casinos. Upon information and belief, in addition to engaging in fraudulent gaming practices, the Defendants are providing gaming services, without restriction, to any person who utilizes Defendants' services,. To the extent the Defendants have engaged in fraudulent gaming practices and are providing gaming services to such persons, Las Vegas Sands' reputation has been damaged by the Defendants' use of the VENETIAN Mark and the VENETIAN Design Mark.

7456708_1

Upon information and belief, Las Vegas Sands is also losing business to the Defendants' online casinos. Persons who would otherwise travel to the United States to gamble at Las Vegas Sands' casinos in Las Vegas, Nevada, are instead gambling at the Defendants' online casinos. The true scope and extent to which the Defendants' activities have resulted in lost revenue and will continue to do so is not known, cannot be measured, and will continue in the absence of a preliminary injunction.

In addition, it is unlikely that Las Vegas Sands will be able to recover on a money judgment entered against the Defendants. The defendants are known to use false identities and are believed to be principally located in mainland China.

Moreover, and most importantly, Defendants are creating the perception that Las Vegas Sands has approved of, authorized, affiliated itself with, or sponsored Defendants' online gambling services when in fact it has not. Las Vegas Sands publicly opposes Internet gambling and has formed the Coalition to Stop Internet Gambling, an advocacy group dedicated to preventing the proliferation of Internet gambling. Las Vegas Sands and the Coalition to Stop Internet Gambling are opposed to the proliferation of online gambling for, among other reasons, the fact that insufficient safeguards exist to protect, children, the elderly, the mentally handicapped, and others from being defrauded by unscrupulous and unregulated Internet casinos, like the very ones operated by the Defendants in this case. The Defendants' use of the VENETIAN Mark and the VENETIAN Design Mark on the homepages of their online casinos, even though unauthorized by Las Vegas Sands, affects Las Vegas Sands' credibility and threatens to interfere with Las Vegas Sands' and the Coalition to Stop Internet Gambling's efforts to stop the proliferation of Internet gambling. This harm cannot be quantified or adequately redressed by an award of money damages, and therefore is irreparable.

The injuries Las Vegas Sands has suffered, namely, injury to its reputation, loss of sales revenue, and the interference with its efforts to stop the proliferation of Internet gambling are injuries that cannot be measured or compensated for by an award of money damages, and, therefore, are irreparable and will continue in the absence of a preliminary injunction.

(ECF No. 2-1, Decl. of David William Horton ¶¶ 20-29.) (Emphasis in original.)

47.      Several district courts have granted injunctions in the default judgment context by accepting as true the facts alleged in plaintiffs' complaints, including facts establishing irreparable injury. *See, e.g., Jellybean Entm't, Inc. v. USNile LLC*, No. 13-cv-144-IEG (WMC), 2013 WL 3147737, at *1 (S.D. Cal. June 19, 2013) (granting injunction in post-*Herb Reed* trademark case, finding irreparable harm based upon allegations in complaint which must be accepted as true upon default); *Innovative Office Products, Inc. v. Amazon.com*, No. 10-4487,

-18-

7456708_1

2012 WL 1466512, at *4 (E.D. Pa. Apr. 26, 2012) (granting permanent injunction because allegations in complaint must be accepted as true and established patent infringement and injury to plaintiff); *Strange Music, Inc. v. Anderson*, 419 Fed. App'x 707, 707-08 (W.D. Mo. 2011) ("We conclude that the district court did not abuse its discretion in granting SMI a permanent injunction, as the injunction was supported by facts alleged in SMI's complaint, which were appropriately deemed to be true."); *Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("since, by defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments, the evidence before the Court established that Plaintiff will likely suffer great prejudice through the loss of sales and diminution of goodwill if default is not entered").

48.     At bare minimum, these facts support an inference that Las Vegas Sands has suffered irreparable harm and will continue to suffer irreparable harm absent injunctive relief. *See, e.g., Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 20, 216 (3d Cir. 2014) (rejecting the presumption of irreparable harm in trademark cases) *discussed in Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 205 (3d Cir. 2014) ("By finding that [plaintiff] SEB established a likelihood of irreparable harm, we are not connecting these facts using a veiled presumption of irreparable harm. *Ferring* bars such a presumption; we emphasize, however, that *Ferring* does not bar drawing fair inferences from facts in the record. Indeed, a key lesson from *Ferring* is that courts considering whether to grant injunctive relief must exercise their equitable discretion in a case-by-case, fact-specific manner. A critical aspect of fact-finding in this and other contexts is drawing reasonable inferences from facts in the record. The inference drawn by Pollard, the District Court, and now this Court—that SEB is likely to suffer irreparable harm to its brand reputation and goodwill—is supported not by a general rule or presumption but by the literally false comparative advertising claims at issue, the competitive relationship between the parties and products, and the judgment of Pollard that the harm to SEB's brand reputation and goodwill is impossible to quantify. Nor does *Ferring* change the rule that harm to reputation and goodwill constitutes irreparable harm, so long as the plaintiff makes a clear showing. Based on the facts of this case, we conclude that SEB clearly

showed a likelihood of irreparable harm to its brand reputation and goodwill."); *see also, e.g., Toyo Tire and Rubber Co., Ltd. v. Kabusikiki Kaisha Toyo Nihoon Rubber Corp.*, No. 2:14-cv-01847-JAD-VCF (D. Nev. Oct. 26, 2015) (overruling magistrate judge's recommendation that permanent injunction be denied, finding that facts alleged in complaint and in the declaration of plaintiff's director of marketing supported an inference of irreparable harm sufficient to support permanent injunction).

49.   Third, the balance of hardships weighs in Las Vegas Sands' favor.  Las Vegas Sands has expended substantial sums of money using and promoting its VENETIAN Mark and VENETIAN Design Mark, and any harm to the Defendants resulting from a permanent injunction that merely forces it to comply with the requirements of the law merits little to no equitable consideration.

50.   Fourth, the public interest lies in favor of upholding property interests in trademarks and preventing customer confusion.

51.   Accordingly, because Las Vegas Sands has suffered irreparable harm and because the balance of harms and the public interest weigh in Las Vegas Sands' favor, the Court will permanently enjoin the Defendants and all others acting in concert or participation with them from using the VENETIAN Mark and the VENETIAN Design Mark in commerce.

## III.   ORDER

In light of the foregoing findings of fact and conclusions of law:

IT IS HEREBY ORDERED THAT Las Vegas Sands' motion for default judgment **(ECF No. 20) is GRANTED**.  The Clerk of the Court shall enter judgment in favor of Las Vegas Sands and against the Defendants.

IT IS FURTHER ORDERED THAT Las Vegas Sands' motion for permanent injunction **(ECF No. 20) is GRANTED**.  The Defendants and all other persons acting in concert or participation with Defendants are hereby permanently restrained and enjoined from: (a) using the VENETIAN Mark (as defined above) or the VENETIAN Design Mark (as defined above) or any confusingly similar variations thereof, alone or in combination with any other letters, words,

7456708_1

letter string, phrases or designs in commerce, including, without limitation, on any website, in any domain name (including, without limitation, in the Domains), in any social network user name, in any hidden website text, or in any website metatag; and (b) engaging in false or misleading advertising or commercial activities likely to deceive consumers into believing that any defendant is Las Vegas Sands or that any defendant's services are associated or affiliated with, connected to, approved by, or sponsored by Las Vegas Sands.

IT IS FURTHER ORDERED that VeriSign, Inc., the domain name registry for the Domains shall, within three (3) business days of receipt of this Order, and at Las Vegas Sands' choosing: (a) unlock and change the registrar of record for the Domains to a registrar of Las Vegas Sands' selection; or (b) disable the Domains and make them inactive and untransferrable.

IT IS FURTHER ORDERED that GoDaddy.com, LLC, the registrar for the Domains, shall, within three (3) business days of receipt of this Order, take any steps necessary to transfer the Domains to a registrar account of Las Vegas Sands' selection so that the Domains can be redirected or disabled.

IT IS FURTHER ORDERED that the Clerk of the Court shall refund to Las Vegas Sands the $100 that Las Vegas Sands previously deposited as security for the Court's temporary and preliminary injunctions in this case.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly.

ENTERED this 3rd day of May, 2016.

_____
**UNITED STATES DISTRICT JUDGE**

-21-

7456708_1